# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BOOZE, | : | CIVIL NO. 1:13-CV-02139 |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

The plaintiff, Joshua Booze ("Booze"), an inmate at the State Correctional Institution at Coal Township ("SCI Coal Township), filed this comprehensive *pro se* civil rights complaint asserting a plethora of claims under 42 U.S.C. § 1983. Along with his complaint, Booze filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Based on his application and the apparent absence of three dismissals within 28 U.S.C. § 1915(g), I recommend granting Booze's motion. I have screened Booze's complaint in accord with 28 U.S.C. § 1915A, however, and I recommend its dismissal.

## I.    Background and Procedural History.

On August 13, 2013, Booze initiated this civil action by filing a complaint containing 107 paragraphs against the following 22 defendants: (1) John Wetzel ("Wetzel"), the Secretary of Corrections for the Pennsylvania Department of Corrections ("DOC"); (2) M. Cloptoski ("Cloptoski"), the Eastern Regional

Superintendent for the DOC; (3) David Varano, the Superintendent at SCI Coal Township; (4) Ronda Ellett ("Ellett"), oversaw security management at SCI Coal Township and was the chair of the prison's "Program Review Committee" ("PRC"); (5) George Miller ("Miller"), a Deputy Superintendent at SCI Coal Township and member of the prison's PRC; (6) Anthony Luscavage ("Luscavage"), a Deputy Superintendent and member of SCI Coal Township's PRC; (7) Michael Miller ("Miller"), a Deputy Superintendent at SCI Coal Township and, another, chairman of the PRC; (8) Linda Chisma ("Chismar"), Correctional Classification and Program Manager at SCI Coal Township and member of the PRC; (9) Charles Stetler ("Stetler"), Captain of Security at SCI Coal Township; (10) R.E. Long ("Long"), Security Lieutenant at SCI Coal Township; (11) Charles Custer ("Custer"), a unit manager at SCI Coal Township; (12) Rhonda Tomcavage ("Tomcavage"), counselor at SCI Coal Township; (13) John Dunn ("Dunn") a unit manager at SCI Coal Township; (14) Therese Jellen ("Jellen"), Mail Inspector Supervisor at SCI Coal Township; (15) Michael White ("White"), Mail Inspector at SCI Coal Township; (16) Steve Moraskie ("Moraskie"), Mail Inspector at SCI Coal Township; (17) Janice Keller ("Keller"), Mail Inspector at SCI Coal Township; (18) Shawn McGinly ("McGinly"), a manager at the Sunbury State Police; (19) FNU Tobaz, a Sergeant at the Sunbury State Police Station; (20) John Chapman, a State Trooper at the Sunbury State

2

Police; (21) Kathleen Strausser ("Strausser"), the Northumberland County Court Prothonotary; (22) Anthony Rosini, ("Rosini"), the Northumberland County District Attorney. Doc. 1 at ¶¶ 4-25. Booze sues these individuals in their individual and official capacities. Moreover, along with his complaint, Booze filed a motion to proceed *in forma pauperis*. Doc. 2.

In his complaint, Booze primarily complains that he was placed in the restricted housing unit ("RHU") on the restricted release list ("RRL"), without a hearing and without explanation. Booze avers, though, that he had a hearing in front of the PRC, he pleaded guilty to misconduct charges at the prison, and his custody status was regularly reviewed by the PRC.

To better understand Booze's complaint about his placement on the RRL, I shall take judicial notice of DOC policy statement, DC–ADM 802, captioned "Administrative Custody Procedures."[1] Under DC–ADM 802, "[t]he Facility Manager/designee may request that an inmate be placed on the [RRL] when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern." DC–ADM 802 at p. 1–2. Criteria for placing an inmate on the RRL includes, but is not limited to, the following: the inmate's assaultive history against staff and/or inmates; sexual

---

[1]     DC–ADM 802 is publically available at the DOC's website at http://www.cor.state.pa.us.

3

assault history; escape or serious escape attempt history; a threat to the orderly operation of a facility; a Special Management Unit (SMU) graduate who remains a threat; and or an SMU failure. *Id.* at pp. 1–2 and 1–3.

According to Booze, the PRC voted to place Booze on the RRL. *See Doc.* 1 at ¶¶ 89, 95. After the PRC voted, Booze alleges that Varano adopted the PRC's vote and sent the recommendation onto Cloptoski and Wetzel, who made the ultimate decision to place Booze on the RRL. *Id.* at ¶¶ 88-89. Booze, however, alleges that he did not meet the criteria for placement on the RRL.

In the prison context, being placed on administrative custody ("AC") status, such as being placed on the RRL, is a status of confinement for non-disciplinary reasons, which provides closer supervision, control, and protection than is provided for in general population. *See* DC–ADM 802 at p. 1–1. AC status inmates are housed in a Security Level 5 Housing Unit. *Id.* There are procedures for placing an inmate in AC.

When an inmate is initially placed in AC, whenever practical, the procedures require that written notice of the reasons for the placement be given to the inmate prior to placement, but in all cases within 24 hours after placement on AC custody status. *Id.* at p. 1–2. The PRC is required to hold an administrative hearing and explain to the inmate the reasons for placement on AC status. *Id.* at p. 1–2 and p. 2–1. The inmate is permitted to respond to the rationale for AC placement. The

PRC decision must be based on some evidence as to whether there is a valid security reason to confine the inmate in AC. *Id.* at 2–1. The PRC is required to prepare a written summary of the hearing that includes the reasons relied upon in reaching its decision. *Id.* The inmate may appeal, in writing, the PRC's decision concerning their initial confinement in AC to the Facility Manager/designee within two days of the completion of the hearing. *Id.* at p. 2–2. If dissatisfied with the responses, the inmate may appeal the decision of the Facility Manager to the Office of the Chief Hearing Examiner. *Id.*

Further, the PRC is charged with reviewing the status of each inmate in AC status every seven days for the first two months. *Id.* at p. 2–3. The Unit Management Team is also required to review the status of every AC inmate every 30 days. The PRC must interview every inmate in AC status every 90 days unless the Unit Management Team recommends an earlier review. During the PRC reviews, the PRC will either decide to release the inmate to general population or continue his or her AC status. *Id.* While the PRC may recommend the release of an inmate on the RRL, only the Secretary of the DOC may approve the release of an RRL inmate from a Security Level 5 Housing Unit, or his transfer to another facility. *Id.* at p. 4–2. An inmate's RRL status is reviewed annually. *Id.* at p. 2–4.

Inmates housed in AC custody do not have the same privileges as inmates housed in general population. *Id.* at p. 3–1. For AC inmates, greater restrictions

are placed on the availability of radios, televisions, telephone calls, personal property, visitation, access to the law library, clothing, recreation, and more, when compared to those privileges enjoyed by inmates housed in general population. *Id.* at pp. 3–1 and 3–2.

However, inmates in AC custody may gain additional privileges over time if granted by the PRC for positive behavior during the review period and for remaining misconduct free. *Id.* at p. 3–2. Inmates held in AC custody, and who have an RRL designation, "may be considered for PRC approved privileges after 90 days from the date he [or she] is assigned to the RRL." *Id.* Likewise, inmates housed in AC status, including those on the RRL, are to be provided access to educational services, commissary, library services, religious guidance, and counseling. *Id.* at pp. 3–3 and 3–4.

While the crux of Booze's complaint involves his custody status, he further alleges that while detained in the RHU, on the RRL, his personal and legal mail was opened outside of his presence and stolen. He bases his conclusion on the fact that his mother once wrote to him, informing him that he forgot her birthday. However, according to Booze he had written to her at least twice within the three weeks preceding her birthday. Booze also claims that he has proof that his mail was tampered with by prison officials because he was told as much by Stetler and by Long through a misconduct report. At the same time, while making these

allegations, Booze claims that he was also informed by Long that his mail was confiscated by the prison because of the content, which violated prison policy.

In addition, Booze complains that he was discriminated against while placed on the RRL in that he did not receive certain privileges that other inmates enjoyed; namely, his ability to place phone calls. Despite his alleged attempts to do so, Booze claims that he rarely, if ever, received responses from the defendants whenever he wrote to them; whether it was a letter that he had written, a grievance, or a request slip. In each instance, whenever Booze complained, it involved the issues that he had with his custody status and his personal belief about the mail system at the prison. Booze even went so far as reaching outside the prison walls by allegedly contacting the Northumberland County District Attorney's Office and the State Police. However, nothing ever materialized for him. In fact, according to Booze, his attempts to reach outside the prison walls proved even more fruitless when he once mailed a habeas corpus petition to both Struasser and Rosini, but it was never filed. Not satisfied, Booze filed this civil rights complaint.

Based on his allegations, Booze raises claims including conspiracy to retaliate and discriminate, retaliation, violation of due process, discrimination in violation of equal protection rights, harassment, theft, willful and wanton misconduct, criminal coercion, actual malice, gross negligence, emotional distress, official oppression, violations of the First, Fourth, Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution, and violations of the Pennsylvania Constitution. Additionally, Booze specifically prays for a declaratory judgment, injunctive relief, compensatory damages in the amount of $250,000, and punitive damages in the amount of $500,000.

## II. **Legal Standard for Screening Complaints Filed by Prisoners.**

In accord with 28 U.S.C. § 1915A I have a statutory obligation to review a complaint filed by a prisoner seeking redress against government officials. In pertinent part, the statute provides:

> (a) Screening.–The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.-On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Thus, as explicitly stated in the Statute, I must assess whether a prisoner's complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure,

which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, [556 U.S. 662], 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State*

*Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

Thus, following *Twombly* and *Iqbal* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Id.* at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' *Id.*" *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.

Last, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

## III.  Discussion.

### A. The Civil Rights Statute, 42 U.S.C. § 1983.

To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured

by the Constitution or laws of the United States. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). The doctrine of *respondeat superior* does not apply to constitutional claims. *See Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Rather, each defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Argueta v. United States ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (same). Personal involvement may be shown through allegations of actual involvement in, personal direction of, or knowledge of and acquiescence to the asserted civil rights violations. *Rode*, 845 F.2d at 1207 (3d Cir. 1988) (citations omitted). Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Id.* at 1208. "In order to satisfy the 'personal involvement' requirement, a complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck*, 326 F. App'x 97, 101

(3d Cir. 2009) (per curiam). Therefore, to the extent that Booze fails to consistently make such allegations of personal knowledge, involvement, direction or acquiescence in wrongful acts, his complaint fails to state a claim upon which relief may be granted.

Additionally, inmates do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137–138 (1977); *Speight v. Sims*, No. 08–2038, 2008 WL 2600723 at *1 (3d Cir. Jun 30, 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")). Thus, any attempt by Booze to establish liability against the defendants based solely upon the substance of their respective responses, or lack thereof, to his grievances, request slips, or administrative appeals, does not support a constitutional due process claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Pryor–El v. Kelly*, 892 F.Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

## B. Eleventh Amendment Sovereign Immunity.

Before proceeding to Booze's particularized claims, I must first address an issue relating to the Court's subject matter jurisdiction. Under the Eleventh Amendment to the United States Constitution, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI. Accordingly, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages; also known as the doctrine of sovereign immunity. *See Pennhurst v. Halderman*, 465 U.S. 89, 99–100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by Eleventh Amendment sovereign immunity. *See Hafer v. Melo*, 502 U.S. 21, 25–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Where sovereign immunity applies, a federal court is stripped of subject matter jurisdiction. *See Johnson v. U.S. Attorneys*, CIV. A. 10-1643, 2010 WL 2991409, at *2-*3 (E.D.Pa. July 27, 2010). Thus, unless a state consents, Eleventh Amendment sovereign immunity bars suits against a state in federal court.

*Pennhurst*, 465 U.S. at 100-01. This is true regardless of whether suit is brought under federal law, *see Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265 (1996), or state law.  *Pennhurst*, *supra*, 465 U.S. at 117, 104 S.Ct. at 917, 79 L.Ed.2d at 89.

Claims for prospective injunctive relief to end an ongoing violation of federal law against state officials in their official capacities, however, are not precluded by the Eleventh Amendment. *See Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011). Additionally, state officials sued in their individual capacities are "persons" within the meaning of § 1983. *See Hafer*, 502 U.S. at 31, 112 S.Ct. at 364–65.  As such, the Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in their individual capacities. *Id.*

Given that the Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity, *see* 42 Pa. Cons. Stat. Ann. § 8521–22, Booze's claims for monetary damages against the defendants in their official capacities are barred by the doctrine of sovereign immunity provisions of the Eleventh Amendment.  As such, only his claims for monetary damages against the defendants in their individual capacities, and his claims for injunctive relief, currently survive.

### C. Fourteenth Amendment Claims.

Booze makes three Fourteenth Amendment claims: one for the alleged denial of equal protection, a second for the denial of procedural due process in that he was placed on the RRL without a hearing, and third for the denial of procedural due process in that McGinley, Tobaz, Chapman, and Rosini did not investigate his criminal legal claims that the prison's mailroom staff were tampering with his mail.

### 1. Booze's Equal Protection Claim.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 1. In order to establish an equal protection claim, a plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Vurimindi v. City of Phila.*, 521 F. App'x 62, 65 (3d Cir. 2013)(citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (1990)). To be "similarly situated," parties must be "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). As well, to demonstrate an equal protection violation, an inmate has the burden of

proving, under the second prong, the existence of purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991);

*McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Official action does not violate the Equal Protection Clause solely because it

results in a disproportionate impact; proof of discriminatory intent or purpose is

required to show a violation. *Village of Arlington Heights v. Metropolitan Housing*

*Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977);

*Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1977);

*Stehney v. Perry*, 101 F.3d 925, 938 (3d Cir. 1996).

    In his complaint, Booze makes no allegations reflecting that he is a member

of a protected class, much less that the defendants discriminated against him on the

basis of him being part of a protected class.  Rather, Booze's only allegation that

comes remotely close to making such an allegation is where he claims that Miller

told him that he is "Blood" and is "special."  *Doc.* 1 at ¶ 67.  Further, it is difficult,

if not impossible, in the context of such individualized discretionary assessments

of placement on AC and / or on the RRL, to establish that anyone is similarly

situated to another so as to succeed on an equal protection theory.  *See, e.g.*, *Rowe*

*v. Cuyler*, 534 F.Supp. 297, 301 (E.D. Pa. 1982) ("[I]t is difficult to believe that

any two prisoners could be considered 'similarly situated' for the purpose of

judicial review on equal protection grounds of broadly based discretionary

decisions [such as parole determinations]”), *aff’d*, 696 F.2d 985 (3d Cir. 1982) (Table); *Perry v. Vaughn*, NO. CIV.A. 04–CV–0934, 2005 WL 736633, at *11 (E.D. Pa. Mar 31, 2005) (“Here, however, Petitioner has not identified any other similarly-situated individuals who the Board treated more favorably without a rational basis. With no averments of fact alleging the different treatment of similarly-situated persons, Petitioner cannot state a violation of equal protection. Consequently, we must dismiss Petitioner's equal protection claim as well.”). Booze’s equal protection claims should therefore be dismissed without prejudice and with leave to amend.

### 2. Booze’s Due Process Claim Regarding His Placement on the RRL.

Next, Booze raises a procedural due process claim against the defendants in that he was placed on the RRL, without a hearing. I do not interpret his complaint as challenging his initial or continued placement in AC, only his placement on the RRL.[2] Under these circumstances, I disagree that due process is violated and Booze has failed to state a claim for relief.

---

[2] To the extent that the Court disagrees with me and reads the complaint to include a challenge to the process by which Booze was initially confined in AC, he fails to allege the lack of a hearing, an inadequate opportunity to be heard, or other procedural shortcoming that would implicate his due process rights. In fact, Booze avers that he attended a misconduct hearing and pleaded guilty to misconduct charges involving his illegal possession of a razor blade, wherein he was sanctioned to serve 75 days in the RHU. *Doc.* 1 at ¶ 34. Before his sanctioned sentence in the RHU was completed, Booze further avers that he was then given a

The Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. The "due process of law" essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty, or property. *Zappan v. Pennsylvania Board of Probation and Parole*, 152 F. App'x 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard."). Hence, to establish a *prima facie* case of a procedural due process violation, a plaintiff must establish: (1) the existence of a protected liberty or property interest; (2) that the state deprived the person of; and (3) that the deprivation was accomplished without procedural protections of notice and an opportunity to be heard. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000); *See Rusnak v. Williams*, 44 F.App'x 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or property. If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard.") (citation omitted); *Castro Rivera v. Fagundo*, 310 F.Supp.2d at 434 (listing elements of *prima facie* due process case).

---

written "other report," informing him that the PRC decided to place him on AC status for the safety and security of the prison. *Id.* at ¶ 35.

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to AC status. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); *Stephany v. Wagner*, 835 F.2d 497, 499 (3d Cir. 1987) ("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population"). Moreover, in this context, the Supreme Court has concluded that state-created liberty interests could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483.

At issue in *Sandin* was whether the plaintiff's 30 day detention in disciplinary custody impacted any protected liberty interest under the Fourteenth Amendment. The Court concluded that the prisoner did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his 30 day detention, although punitive, "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id.* at 486. In finding that

the prisoner's 30 day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the *Sandin* Court considered: 1) the amount of time the prisoner was placed into disciplinary segregation and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement. *Id.*

Following *Sandin*, the Third Circuit decided *Shoats v. Horn*, 213 F.3d 140 (3d Cir. 2000). In *Shoats*, a prisoner had been placed in AC and was maintained there in virtual isolation for eight years. The Court noted that such a long-term placement clearly gave rise to procedural due process protections under the analysis mandated by *Sandin*; however, relying upon *Hewitt v. Helms*, 459 U.S. 460 (1983), the Third Circuit held that informal, periodic review of a prisoner's administrative custody status satisfies the minimum constitutional standards for due process. *Shoats*, 213F.3d at 147.

Accordingly, to succeed on this claim, Booze must allege that his status in AC, on the RRL, subjected him to an atypical and significant hardship. The Third Circuit made clear in *Griffin v. Vaughn*, 112 F.3d 703, 706 & n. 2 (3d Cir. 1997), which remains intact following *Shoats*, that a prisoner placed in the conditions of AC for a period of 15 months does not implicate a liberty interest. In Booze's complaint, it is unclear whether he still remains in AC, on the RRL, or whether he

was removed from the RRL before 15 months had passed. Even so, assuming he has alleged enough to show a depravation of a protected liberty interest, Booze avers that his status on the RRL was periodically reviewed by the PRC and he does not complain about the adequacy of those reviews. *See Doc.* 1 at ¶¶ 36-37. Rather, Booze's complaint is focused on his perceived lack of a hearing before being placed on the RRL. Applying the law to Booze's claims and allegations, he simply fails to state a claim for relief and these claims should, therefore, be dismissed with prejudice.

### 3. Booze's Due Process Claims Regarding the Alleged Failure to Investigate His Criminal Complaints.

Last, with respect to Booze's final Fourteenth Amendment claim, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Whether a person has a legitimate claim of entitlement in a benefit depends on state law. *Id.* For example, where a state law defines welfare eligibility and gives all who meet the criteria the right to receive welfare benefits, the right to welfare is an entitlement implicating procedural due process. *See id.* (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

Rule 506 of the Pennsylvania Rules of Criminal Procedure provides, with respect to private criminal complaints, that:

(A) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.

(B) If the attorney for the Commonwealth:

(1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;

(2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition a court of common pleas for review of the decision.

Even assuming that the attorney has an obligation to investigate a complaint, it does not follow that the complainant has an entitlement to have his or her complaint investigated. Indeed "[m]aking the actions of government employees obligatory can serve various legitimate ends other than the conferral of a benefit on a specific class of people." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 765, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). In criminal law, it is "[t]he serving of public rather than private ends [which] is the normal course" because criminal acts harm society as a whole. *Id.* at 761, 765 (discussing "[t]he deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands").

In light of the traditional discretion given to prosecuting attorneys and law enforcement officials, coupled with Rule 506's failure to clearly grant a

complainant a statutory entitlement to have his complaint investigated, it is evident that the legislature did not intend to confer a statutory entitlement to complainants to have investigations conducted. Thus, Booze has no protected property interest within the meaning of the Fourteenth Amendment, and the procedural due process claim against these defendants should be dismissed with prejudice.

### D. Eighth Amendment Claims.

Booze further claims that the defendants violated the Eighth Amendment by placing him in AC, on the RRL, without a legitimate factual or substantive basis. In order to assert a violation of the Eighth Amendment, a prisoner must allege that he has been deprived of "the minimal civilized measure of life's necessities."[3] *Griffin*, 112 F.3d at 709. This is a difficult standard to meet, and Booze's complaint fails to assert such a deprivation. Moreover, the Third Circuit has held that the conditions of administrative segregation do not violate the Eighth Amendment. *See id.* As a result, mere placement in AC, on the RRL, does not violate the Eighth Amendment. *See Milhouse v. Arbasak*, Civil Action No. 07-CV-01442-JF, 2009 WL 1119488, at *3 (E.D. Pa. Apr. 27, 2009) (finding that mere placement in a special housing unit does not violate the Eighth Amendment). Booze's Eighth Amendment claims should, therefore, be dismissed with prejudice.

---

[3]     The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. Amend. VIII.

**E. Fifth Amendment Claims.**

Although it is not entirely clear from his complaint, it appears that Booze intends to raise due process claims arising under the Fifth Amendment. The Fifth Amendment, however, only applies to actions of (or by) the Federal Government. *Colon-Martinez v. Pennsylvania Healthcare Service Staffs*, No. 13-2040, 2013 WL 3481811, at *2 (3d Cir. June 27, 2013)(citing *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n. 11 (2005)); *see also Rauso v. Zimmerman*, No. 3:97-CV-1841, 2006 WL 3717785, at *1 n. 7 (M.D. Pa. Dec. 14, 2006). In this case, Booze's claims are asserted solely against state actors and he has not alleged that any of the defendants were acting under the authority of the federal government. As such, his claims should be dismissed with prejudice.

**F. Retaliation Claims.**

In addition to the aforementioned, Booze raises a general retaliation claim for the defendants' decision to place him on the RRL. *See, e.g.*, *Doc.* 1 at ¶ 87. In so doing he relies on mere conclusory statements that do not suffice, *Iqbal*, 556 U.S. at 678, and will not be discussed at length herein. Further, Booze claims that because he filed grievances and wrote letters to advocacy groups, Varano and the mailroom defendants retaliated against him by "reading and stealing" his mail. *See, e.g.*, *Doc.* 1 at ¶ 95. The latter will serve as the focal point of this discussion.

To properly allege a claim for retaliation, Booze must establish that he (1) engaged in constitutionally protected conduct, (2) prison officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000); and (3) the "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline" the inmate. *Rauser v. Horn*, 241 F.3d 330, 333–334 (3d Cir. 2001) (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration of a "causal link between constitutionally protected action and the adverse action taken against him").

First, "[t]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–84 (1981)). Thus, if Booze's allegations are true, he engaged in constitutionally protected conduct prior to the alleged retaliatory conduct. As well, taking his allegations as true, Booze alleges that his mail was interfered with by the defendants because he filed grievances. Even so, Booze fails to plead sufficient allegations demonstrating causation.

A plaintiff "may demonstrate causation through a 'pattern of antagonism' following the plaintiff's protected conduct or unusually suggestive temporal proximity" between the protected and retaliatory conduct. *Motto v. Wal–Mart Stores East, LP*, No. 11–2357, 2013 WL 1874953, at *8 (E.D. Pa. May 13, 2013) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997)). A plaintiff must also properly "allege a chronology of events from which retaliation may be inferred." *Bendy v. Ocean Cnty. Jail*, 341 F. App'x 799, 802 (E.D. Pa. 2009) (citations and internal quotations omitted).

Here, Booze does not allege that any of the defendants had any knowledge of grievances (or any letters that he sent to any advocacy groups) that he filed prior to the time that he believes that his mail was stolen and read. Booze also fails to allege sufficient facts to establish a "pattern of antagonism." Therefore, absent any allegations demonstrating causation, I recommend dismissing each of Booze's retaliation claims without prejudice and with leave to amend.

## G. Civil Conspiracy Claims.

Next, Booze raises a multi-faceted civil conspiracy claim. Specifically, Booze alleges that: (1) Wetzel, Cloptoski, Ellett, Luscavage, Miller, Chismar, Dunn, Stetler, and Varano conspired to place him on the RRL in violation of his due process and equal protection rights; (2) Varano, Jellen, White, Keller, Moraski, Stetler, and Long conspired to steal and read his mail; and (3) Long, McGinley,

Tobaz, Chapman, Strausser, and Rosini conspired to retaliate against him in an unspecified manner.

Generally, to establish a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, No. 13–1283, 2013 WL 2636643, *3 (3d Cir. June 13, 2013) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). More specifically, to assert a conspiracy under § 1983, a plaintiff must establish the elements of a state law conspiracy claim. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Williams v. W. Wayne Sch. Dist.*, Civ. No. 12–cv–2074, 2013 WL 4718920, *8 (M.D. Pa. Sept.3, 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa.Super.Ct. 2008). "[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)). In other words, Booze must allege "some factual basis to support the existence of the elements of a conspiracy," namely the

existence of an agreement and concerted action. *Id.* (citing *Capogrosso*, 588 F.3d at 184); *Savage v. Judge*, 644 F.Supp.2d 550, 561 (E.D. Pa. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. *Savage*, 644 F.Supp.2d at 561.

In this matter, Booze simply ignores these pleading requirements. Specifically, Booze fails to allege the existence of any agreement between any of these defendants, much less between any of the separate groups of defendants. In a similar vein, taking Booze's allegations as true, his current pleading sets forth nothing more than mere acts of conscious parallelism, which is insufficient to state a civil conspiracy claim. Last, Booze fails to actual legal damage to the extent that he fails to raise a proper due process violation, equal protection violation, and claim of retaliation. As such, Booze's civil conspiracy claims should be dismissed without prejudice and with leave to amend.

## IV.    Recommendations.

For the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Booze's complaint (*Doc.* 1) be **DISMISSED** with leave to amend consistent with this report;

(2) Booze's motion for leave to proceed *in forma pauperis* (*Doc.* 2) be

   **GRANTED**; and

(3) The case be **REMANDED** to the undersigned for further pre-trial

   management.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **16th** day of **December, 2013**.


                         *S/ Susan E. Schwab*
                         Susan E. Schwab
                         United States Magistrate Judge