IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BOOZE, | : | CIVIL NO. 1:13-CV-2139 |
| | : | |
| **Plaintiff** | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JOHN WETZEL, et al., | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

On August 13, 2013, the plaintiff, Joshua Booze, a state inmate, filed a *pro se*

complaint naming 22 correctional officials, court officers, police and prosecutors as

defendants. (Doc. 1.) Liberally construed, Booze's complaint seemed to allege, albeit

in an inadequate fashion, that these officials retaliated against the plaintiff, interfered

with his right of access to the courts, denied him due process, and conspired together

to violate his constitutional rights.

Upon a screening review, it was recommended that the complaint be dismissed

without prejudice to the filing of an amended complaint, (Doc. 10.), a recommendation

which the district court adopted. (Doc. 11.) Booze then filed an amended complaint,

(Doc. 14.), which is the operative pleading in this lawsuit. With respect to defendant

District Attorney Anthony Rosini, this amended complaint does not directly implicate defendant Rosini in any alleged wrongdoing at the prison.  Instead, Booze simply alleges that at various times between April and September 2012, he wrote after-the-fact to the district attorney seeking a prosecution of prison officials for allegedly stealing his mail.  Booze also alleges that he attempted to file a petition for writ of habeas corpus which sought to challenge the conditions of his confinement.  According to Booze, District Attorney Rosini did not approve his private criminal complaint, never responded to his correspondence seeking to file such a private criminal complaint, or never timely addressed his initial attempted filing of a habeas corpus petition.  On the basis of these allegations, Booze seeks to hold the District Attorney personally liable for constitutional tort violations. (Doc. 14, ¶¶ 67, 75, 82, 83, 97, and 99.)  Defendant Rosini has now moved to dismiss this complaint, arguing that the amended complaint, like the original pleading that was found inadequate by the Court, fails to state a claim upon which relief may be granted.  (Doc. 25.)  This motion is fully briefed by the parties, (Docs. 28 and 45.), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.   Discussion

### A.   Motion to Dismiss, Standard of Review

Defendant Rosini has moved to dismiss this amended complaint pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint

should be dismissed for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency

of a complaint, the United States Court of Appeals for the Third Circuit has aptly

noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have
> seemingly shifted from simple notice pleading to a more heightened form
> of pleading, requiring a plaintiff to plead more than the possibility of
> relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most

favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d

1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald

assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

Judged against these benchmarks, for the reasons set forth below we find that Booze has failed to state a claim upon which relief may be granted with regard to defendant Rosini. Therefore, it is recommended that this amended complaint be dismissed with respect to defendant Rosini.

### B.      Booze Has Failed to State a Claim Upon Which Relief May be Granted With Respect to Defendant Rosini

In this case, Booze has leveled far-reaching, yet amorphous, constitutional claims against District Attorney Rosini, alleging in a pleading that is largely bereft of facts that this defendant retaliated against him, denied him access to the courts, and conspired to violate his constitutional rights. Yet, when these legal conclusions are stripped away from Booze's amended complaint, what remains are well-pleaded facts that fall far short of a constitutional tort, and merely allege that the District Attorney's office failed to approve, or respond to, Booze's efforts to lodge a private criminal complaint regarding about the handling of his prison mail, and later allegedly neglected to respond to a pleading that Booze styled as a habeas corpus petition which complained about the conditions of Booze's confinement.

These claims fail as a matter of law for a number of reasons. First, it is well-settled that a prosecutor's exercise of his discretion in litigation entrusted to the prosecutor's office is conduct that is cloaked in immunity from civil liability. The immunity conferred upon prosecutors is broad and sweeping. As the courts have observed:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." Court has

noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors:   [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." ... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Recognizing this broad immunity conferred upon state prosecutors, it has been held that a prosecutor's alleged failure to timely respond to a *pro se* habeas corpus petition submitted by a prisoner, standing alone, does not give rise to civil rights liability.  See Johnson v. Pennsylvania, No. 4:12-CV-2588, 2013 WL 2285280, at *6 (M.D. Pa. May 23, 2013).  Likewise, it has long been held that a district attorney's decision declining to endorse a private criminal complaint is cloaked in prosecutorial immunity and may not form the basis of a civil rights lawsuit.  See e.g., Turack v. Guido, 464 F.2d 535, 536 (3d Cir. 1972); Iseley v. Bucks Cnty., 549 F. Supp. 160, 166 (E.D. Pa. 1982); Raitport v. Provident Nat. Bank, 451 F. Supp. 522, 528 (E.D. Pa. 1978).  Thus, the acts complained of by Booze simply do not give rise to civil liability but rather fall within the scope of the absolute immunity conferred upon prosecutors.

Furthermore, to the extent that Booze argues that the failure of the District

Attorney to respond to his habeas corpus petition, which challenged the conditions of

confinement, deprived him of his right of access to the courts this claim fails for yet

another reason. Since 1977, the United States Supreme Court has recognized that

inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S.

817 (1977). As the Supreme Court initially observed, this right of access to the courts

is satisfied when corrections officials facilitate "meaningful" access for those

incarcerated, either through legal materials or the assistance of those trained in the

law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts

requires prison authorities to assist inmates in the preparation and filing of meaningful

legal papers by providing prisoners with adequate law libraries or adequate assistance

from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and

guidance regarding the scope and nature of this right of access to the courts in Lewis

v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this

right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete

outcomes when assessing such claims. As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law
> library or legal assistance, an inmate cannot establish relevant actual
> injury simply by establishing that his prison's . . . legal assistance
> program is subpar in some theoretical sense. . . . Insofar as the right
> vindicated by Bounds is concerned, "meaningful access to the courts is

the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the  . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497.  Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts.  Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis courts have consistently recognized several guiding principles which animate access-to-court claims by prisoners.  First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).  Furthermore, in order to bring a claim based upon the right of access to the courts, inmates must claim "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit."  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir.2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413

(2002)) (internal quotations omitted).  Thus, in order to state a claim upon which relief

may be granted an inmate-plaintiff's complaint must "describe the underlying arguable

claim well enough to show that it is 'more than mere hope,' and it must describe the

'lost remedy.' "  Monroe, 536 F.3d at 205–06 (quoting Christopher, 536 U.S. at

416–17).

Here, the lost claim that serves as the lynchpin of Booze's access-to-courts

claim is a habeas corpus petition relating to the conditions of his confinement, namely,

his placement in restricted housing.  Cast in this way, it appears that Booze's lost

claim was little more than a mere hope since his complaints about the conditions of

his confinement simply do not sound in habeas.  The writ of habeas corpus, one of the

protections of individual liberties enshrined in our Constitution, serves a specific, and

well-defined purpose.  The writ of habeas corpus exists to allow those in the custody

of the state to challenge in court the fact, duration and lawfulness of that custody.  As

the United States Court of Appeals for the Third Circuit has aptly noted: "The

underlying purpose of proceedings under the 'Great Writ' of habeas corpus has

traditionally been to 'inquire into the legality of the detention, and the only judicial

relief authorized was the discharge of the prisoner or his admission to bail, and that

only if his detention were found to be unlawful.' "  Powers of Congress and the Court

Regarding the Availability and Scope of Review, 114 Harv. L.Rev. 1551, 1553

(2001)."   Leamer v. Fauver 288 F.3d 532, 540 (3d Cir. 2002).  However, there is a

necessary corollary to this principle, one which has long been recognized by the

courts; namely, "[i]f a . . . prisoner is seeking [other relief], he is attacking something

other than the fact or length of his confinement, and he is seeking something other

than immediate or more speedy release-the traditional purpose of habeas corpus.  In

[such cases], habeas corpus is not an appropriate or available federal remedy." Preiser

v. Rodriguez, 411 U.S. 475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of the

conditions of his confinement unrelated to the fact or duration of his detention, courts

have repeatedly held that the writ of habeas corpus is not the proper vehicle for

bringing this legal challenge.  For example, in Leamer v. Fauver, supra the United

States Court of Appeals discussed whether a habeas corpus petition was the

appropriate tool for an inmate to use when challenging a prison  placement decision.

In terms that are equally applicable here the Court of Appeals held that these type of

claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of
> Supreme Court jurisprudence clarifying when [habeas and other civil
> rights relief] is unavailable: whenever the challenge ultimately attacks the
> "core of habeas" -the validity of the continued conviction or the fact or
> length of the sentence-a challenge, however denominated and regardless
> of the relief sought, must be brought by way of a habeas corpus petition.
> Conversely, when the challenge is to a condition of confinement such

that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542 .

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to examine prison placement and housing decisions. These invitations have been consistently declined by the courts as a legal exercise which fall beyond the scope of habeas corpus jurisdiction. See, e.g., Bedenfield v. Lewisburg, 393 F. App'x 32, 33 (3d Cir. 2010)(challenge to placement in the SMU is analogous to the "garden variety prison transfer" that we have indicated should be challenged in a civil rights action, not via a habeas petition, citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243 (3d Cir.2005)); Dickerson v. Diguglielmo, 306 F. App'x 707 (3d Cir. 2009); Jupiter v. Warden, U.S.P. Lewisburg, 237 F. App'x 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006); Beckley v. Miner, 125 F. App'x 385 (3d Cir. 2005).

Since Booze could not have used a petition for writ of habeas corpus to challenge the conditions of his confinement, he has not met the first prerequisite for a valid access-to-courts claim. He has not "describe[d] the underlying arguable claim well enough to show that it is 'more than mere hope.'" Monroe, 536 F.3d at 205–06

(quoting Christopher, 536 U.S. at 416–17).  Therefore this claim fails as a matter of

law.

Finally, Booze's conspiracy claim, which is also pleaded in a conclusory fashion

without supporting factual detail, also fails to state a claim upon which relief may be

granted.  In this regard, as we have previously noted:

> [I]n order to plead a civil rights action based upon a claim of conspiracy,
> a plaintiff must plead allegations that are:
>
> > supported by facts bearing out the existence of the
> > conspiracy and indicating its broad objectives and the role
> > each defendant allegedly played in carrying out those
> > objectives.  Bare conclusory allegations of "conspiracy" or
> > "concerted action" will not suffice to allege a conspiracy.
> > The plaintiff must expressly allege an agreement or make
> > averments of communication, consultation, cooperation, or
> > command from which such an agreement can be inferred.
>
> Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D.Pa.1992).  Furthermore,
> when pleading a conspiracy claim, a plaintiff cannot rely upon subjective
> suspicion and speculation.  Young v. Kann, 926 F.2d 1396, 1405 n. 16
> (3d Cir.1991).  Quite the contrary, "to properly plead an unconstitutional
> conspiracy, a plaintiff must assert facts from which a conspiratorial
> agreement can be inferred.  D.R. v. Middle Bucks Area Vocational Tech.
> Sch., 972 F.2d 1364, 1377 (3d Cir.1992); see also Startzell v. City of
> Philadelphia, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy
> requires a 'meeting of the minds') (further citation omitted).  This holding
> remains good law following Twombly and Iqbal, which, in the
> conspiracy context, require 'enough factual matter (taken as true) to
> suggest that an agreement was made,' in other words, 'plausible grounds
> to infer an agreement.'  Twombly, 550 U.S. at 556, 127 S.Ct. 1955, 167
> L.Ed.2d 929."  Great W. Mining & Mineral Co. v. Fox Rothschild LLP,
> 615 F.3d 159, 178 (3d Cir.2010) cert. denied, —— U.S. ——, 131 S.Ct.
> 1798, 179 L.Ed.2d 655 (U.S.2011).  We are mindful of these pleading

requirements, which are considered together with the standards of pleading applicable to all civil actions in federal court as defined in Twombly and Iqbal, supra.

Victor v. Huber, No. 3:12-CV-282, 2012 WL 7463723, at *14 (M.D. Pa. Nov. 29, 2012) report and recommendation adopted sub nom. Victor v. Hubbard, No. 3:12-CV-00282, 2013 WL 704654 (M.D. Pa. Feb. 26, 2013).

Here Booze's amended complaint completely fails to meet the pleading standards for a valid civil conspiracy claim with respect to District Attorney Rosini. The claims of conspiracy set forth in the amended complaint are entirely speculative and conclusory, and the only factual averments relating to the district attorney pertain to his failure to approve a private criminal complaint, or promptly respond to a *pro se* filing styled as a petition for writ of habeas corpus.  Both of these actions are cloaked in prosecutorial immunity, and in the absence of any other well-pleaded factual assertions, Booze's conspiracy claim against the District Attorney fails as a matter of law.

Finally, even if Booze had stated a colorable claim against defendant Rosini, the defendant would nevertheless be entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim Booze must show an arguable deprivation of a right secured by the United States Constitution or the laws of the United States.  Satisfying these elements alone, however, does not guarantee that Booze is entitled to recover damages from these public officials. Government officials

performing "discretionary functions," are insulated from suit if their conduct did not

violate a "clearly established statutory or constitutional right[] of which a reasonable

person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also

Pearson v. Callahan, 555 U.S. 223 (2009).   This doctrine, known as qualified

immunity, provides officials performing discretionary functions not only defense to

liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d

664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).   Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  Wilson, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and

award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Id.  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, the district attorney's actions relating to his refusal to approve a private criminal complaint, and his failure to promptly reply to a *pro se* document styled as a habeas corpus petition, have been held not to give rise to civil rights liability. See e.g., Turack v. Guido, 464 F.2d 535, 536 (3d Cir. 1972); Johnson v. Pennsylvania, No. 4:12-CV-2588, 2013 WL 2285280, at *6 (M.D. Pa. May 23, 2013);

Iseley v. Bucks Cnty., 549 F. Supp. 160, 166 (E.D. Pa. 1982);  Raitport v. Provident

Nat. Bank, 451 F. Supp. 522, 528 (E.D. Pa. 1978).  Given the state of the law in this

field, in this setting the defendant simply could not have recognized that these actions

would violate "clearly established statutory or constitutional right[] of which a

reasonable person would have known."  Wilson v. Laid, 526 U.S. 603, 609 (1999).

Therefore, the defendant is also entitled to qualified immunity on these claims.[1]

We recognize that *pro se* plaintiffs should be afforded an opportunity to amend

a complaint before the complaint is dismissed with prejudice, see Fletcher-Hardee

Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is

clear that granting further leave to amend would be futile, or result in undue delay.

Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, Booze has been

provided an opportunity to amend his complaint, but to no avail.  His amended

complaint still fails to state a claim upon which relief can be granted, and given the

inadequacy of this pleading, it appears that granting further leave to amend would be

futile, or result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).

Therefore, it is now recommended that this claim now be dismissed with prejudice.

---

[1]This Court is entitled to address this qualified immunity defense *sua sponte*, when appropriate.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

## III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that defendant

Rosini's motion to dismiss the complaint, (Doc. 25.), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of August 2015.

                                         **_S/Martin C. Carlson_**
                                         Martin C. Carlson
                                         United States Magistrate Judge