IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BOOZE, | : | Civil No. 1:13-CV-2139 |
| | : | |
| Plaintiffs | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| JOHN WETZEL, et al., | : | |
| | : | |
| Defendants | : | |

REPORT AND RECOMMENDATION

I.   INTRODUCTION

This is a lawsuit brought by Joshua Booze, an inmate in the custody of the Pennsylvania Department of Corrections, currently incarcerated at the State Correctional Institution at Green ("SCI-Greene"). After a number of Booze's claims were dismissed by court order entered on September 2, 2015, the only claims remaining in this litigation are Booze's claims that a number of named DOC employees tampered with his legal mail, either by reading it outside of Booze's presence, or by destroying it so that it could not be delivered to its intended recipient. The remaining defendants in this action are

Therese Jellen, Michael White, Steve Moraskie, Janice Keller, Charles Stetler and R.E. Long.  The plaintiff alleges that the defendants tampered with his mail at various times between February and May 2012, in violation of Booze's First Amendment rights. (Doc. 14, ¶¶ 59, 62, 64, 67.)

Now pending before the Court is the remaining defendants' motion for summary judgment on Booze's mail tampering claims.  The defendants argue that they are entitled to judgment in their favor because Booze failed to exhaust his administrative remedies regarding his allegations of mail tampering, and because the claims fail on their merits because there is an absence of evidence to support Booze's assertions that the defendants did any of the things alleged. Additionally, the defendants note that in several instances of alleged tampering, the mail in question was not "legal mail," but instead personal correspondence in which Booze, as an inmate, does not have a protected First Amendment interest in preventing the defendants from looking at the mail outside of his presence.

Although the parties spend a substantial portion of their briefs quarreling over whether Booze properly exhausted his available

administrative remedies, we find that the plaintiff's allegations and the limited evidence in the record simply do not support the plaintiff's substantive First Amendment claims in any event. Accordingly, for the following reasons, it will be recommended that the defendants' motion for summary judgment be granted on the merits.

## II. BACKGROUND

The plaintiff first claims that two letters that he sent from SCI-Coal Township to his mother were never received, and he presumes that the letters were improperly confiscated by unidentified prison personnel. The plaintiff has been unable to support his presumption with actual evidence, such as who confiscated the letters, or how they were confiscated. Instead, the record seems to consist of the plaintiff's speculative assertion that these two private pieces of mail intended to reach his mother never did. The plaintiff alleges that he had written to his mother, in part, to wish her a happy birthday and in her letter back to him she claimed that he had forgotten her birthday. Based upon this information from his mother, the plaintiff concludes that someone at SCI-Coal Township must have destroyed the letter he had tried to send his other earlier. (Doc. 14, ¶ 50.)

Similarly, the plaintiff claims that he sent letters to the Prison Activist Resource Center and the Human Rights Watch Prison Project, but that these letters also must have been confiscated because he never received a response. There is no evidence in the record to show that these letters were not properly handled or that they were confiscated or destroyed. Instead, the plaintiff simply posits that the defendants must have tampered with the letters because he did not receive a reply. (Doc. 14, ¶ 58.)

The plaintiff also claims that he received a receipt indicating that some of his outgoing legal mail had been confiscated, but then he identifies letters purportedly written to family members dated February 17, 2012, March 2, 2012, and March 5, 2012. Nowhere in the amended complaint does the plaintiff allege that these pieces of correspondence constituted "legal mail," and the record is devoid of evidence to show that these letters were indeed legal mail, or even that the defendants' confiscation of the letters was improper. (Doc. 14, ¶ 59.)

Similarly, the plaintiff claims that on April 17, 2012, he wrote the Commonwealth Court of Pennsylvania to request a copy of the court's local rules, but never received a response. Once again, the plaintiff

presumes that the reason he did not receive a reply from the court is that some unknown person in the prison mailroom must have confiscated and destroyed his outgoing letter, but he has no proof to back up this allegation. (Doc. 14, ¶ 63.)

This pattern of unsubstantiated allegations continues with respect to letters that the plaintiff claims the Pennsylvania State Police sent to him, and which he contends were opened outside of his presence despite being legal mail. There appears to be no evidence to support the plaintiff's assertion that the mail in question was "legal mail," or what it consisted of, or who confiscated and opened it outside of his presence. (Doc. 14, ¶ 64.) It appears that the plaintiff did receive a letter from the State Police, but he felt it should not have been opened outside of his presence, since according to him it was "legal mail".[1]

The plaintiff also maintains that he wrote letters to both the Pennsylvania State Police and a District Attorney's office about some complaints he was having about staff at SCI-Coal Township, but never received responses to his entreaties, so he asserts that his letters must

---

[1] There is nothing in the record to substantiate this dubious claim, and it is difficult to fathom how a letter from a law enforcement agency to the plaintiff could qualify as "legal mail" subject to some additional protections in the prison setting.

have been destroyed before they were sent. Once again, there is nothing in the record to support this claim, other than the plaintiff's own speculation that confiscation and destruction occurred. (Doc. 14, ¶ 67.)

Finally, the plaintiff asserts that a letter he addressed to his family in April 2013 was returned to him opened, and he claims that the fact that the letter was opened proves that it was unlawfully tampered with. It is not clear that the plaintiff is claiming that the letter constituted "legal mail," and his allegation of tampering or mail destruction with respect to this single piece of correspondence lacks further evidentiary support or factual description. (Doc. 14, ¶ 87.)

As explained below, we find that the plaintiff's limited allegations that the some unknown person or persons unlawfully interfered with the plaintiff's mail, coupled with an absence of evidence to support those allegations, now compels the entry of judgment in favor of the remaining defendants.[2]

---

[2] The plaintiff has submitted a declaration and affidavits from other inmates that he claims provides evidence to support his claims. (Doc. 65, Ex. 2.) These affidavits, however, merely recite two isolated incidents regarding exchanges that the plaintiff allegedly had with two staff members at SCI-Coal Township concerning his ongoing complaints about mail tampering. The affidavits do nothing to create a genuine issue of material fact regarding the plaintiff's First Amendment claims,

III. <u>STANDARD OF REVIEW</u>

The defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a

---

and they shed no light on the nature of the correspondence identified in the amended complaint, or about what if anything happened to that correspondence. Furthermore, the plaintiff has essentially asked the court to deny the motion for summary judgment on the basis of the plaintiff's own conclusory suggestion that additional discovery will prove his claims. This unsubstantiated and speculative assertion is not sufficient to preclude summary judgment where there has been no evidentiary showing to make out a triable issue on the narrow claims remaining in this case.

sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); accord *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. *Anderson,* 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

## IV. DISCUSSION

As noted, the scope of this case is now confined to the plaintiff's claims that the remaining defendants unlawfully interfered with his First Amendment rights by confiscating or otherwise mishandling letters that he attempted to mail from SCI-Coal Township to family members, a court, the Pennsylvania State Police, and a District Attorney's office, and that they mishandled his incoming mail.

The Supreme Court has made clear that prisoners do not surrender all constitutional rights during their confinement, and the Supreme Court has instructed that "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987). In this regard, the Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails," particularly with respect to privileged "legal mail" exchanged with counsel, and that a "pattern and practice of opening

9

properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), overruled on other grounds, *Lewis v. Casey*, 518 U.S. 343 (1996); *see also Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (reaffirming *Bieregu* and holding that "[a] state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.").

At the same time, the Supreme Court has emphasized that prison administration is "an inordinately difficult undertaking," and many aspects of that undertaking are "peculiarly within the province of the legislative and executive branches of government" rather than matters subject to judicial administration. *Turner*, 482 U.S. at 85. Accordingly, in *Turner* the Supreme Court endeavored to balance the constitutional rights of prison inmates against the "inordinately difficult" job of prison administration, and held that prison regulations that impinge upon the constitutional rights of inmates will be valid provided that the

regulation "is reasonably related to legitimate penological interests." *Id.* at 89. Importantly, courts need only engage in this *Turner* analysis if an inmate "has [first] demonstrated that a constitutionally protected interest is at stake." *Jones*, 461 F.3d at 359 (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)).

*Bieregu* and *Jones* make a point here that seems to have eluded the plaintiff: the constitutional right at issue is the right of inmates to receive *legal* mail without prison officials reading that mail outside of the inmate's presence. In *Fontroy v. Beard*, the Third Circuit upheld the constitutionality of the Pennsylvania Department of Corrections' mail-handling policy with respect to legal mail and found that the DOC's practice of distinguishing between regular mail and legal mail, which is subjected to greater protections, was constitutional.[3]

---

[3] In *Fontroy*, the Third Circuit described the Pennsylvania policies and procedures for handling and inspecting legal mail. Between 1970 and 2002, the DOC looked at the return address alone to determine whether the sender was an attorney or court in order to determine if a piece of mail constituted "legal mail", in which case the correspondence was classified as a "Privileged Correspondence." Any mail so designated was then separated from the regular mail, sent to the corrections facility, and then opened and inspected for the first time by officers in the presence of the recipient-inmate. 559 F.3d at 175. In 2002, that practice changed because prison administrators had discovered that inmates were attempting to smuggle contraband in what was erroneously asserted to be "legal mail." Accordingly, the DOC issued new guidelines providing that incoming attorney communications could be treated as privileged communication only if one of two conditions were met: (1) the attorneys hand-delivered the sealed communications to DOC facilities; or (2) the

Notably, courts have also found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (accidental opening of a single piece of legal mail did not give rise to a claim); *Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate-plaintiff merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997)

---

attorneys obtained a control number from the DOC and placed that number on each piece of correspondence mailed to an inmate. *Id.* at 175-76. The policy was later revised further so that courts could obtain control numbers, and also provided that all incoming mail that did not bear a control number but appeared to issue from a court would be hand-delivered "after it was opened and inspected like other regular mail." *Id.* at 176. The Third Circuit upheld the constitutionality of the DOC's policies for the handling of legal mail after subjecting that revised policy to the balancing inquiry compelled by *Turner*. *Id.*

(isolated and inadvertent mishandling of legal mail not actionable); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (same).

It is also true that inmates have rights that extend beyond interference with their "legal" mail. Indeed, prisoners have protected First Amendment rights in both sending and receiving mail generally. *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Thus "[i]t is well-settled that interference with inmate non-legal mail may amount to a denial of free speech under the First and Fourteenth Amendments." *Freeman v. Northumberland County*, 2012 WL 951481, at *8 (M.D. Pa. March 20, 2012) (citations omitted). In cases involving limitations on an inmate's ability to send outgoing mail, courts should inquire as to "whether the prison restriction of conduct relating to outgoing inmate mail furthered an important or substantial government interest unrelated to the suppression of expression, and whether the conduct was intrusive only to the degree necessary to protect that interest." *Id.* (citing *Hamm v. Rendell*, 166 F. App'x 599, 603 (3d Cir. 2006); *see also Nasir v. Morgan*, 350 F.3d 366, 371-72 (3d Cir. 2003) (the balancing test described in *Procunier v. Martinez*, 416 U.S. 396 (1974) should be applied to restrictions on outgoing prisoner correspondence).

However, although inmates retain the right to send and receive personal mail, in general, prisoner non-legal mail can be opened and read outside of an inmate's presence without violating a prisoner's constitutional rights. *See, e.g., Ali v. Howard*, No. 05-0102, 2008 WL 4427209 (D. Del. Sept. 30, 2008) ("Prison inmates have no expectation of privacy regarding their personal mail."), *aff'd* 353 F. App'x 667, 670 (3d Cir. 2009) (the plaintiff provided no evidence to show that five or six letters that were allegedly opened and read by prison staff were properly marked as legal mail, and therefore the court found no First Amendment violation); *see also Witherow v. Paff*, 52 F.3d 264, 265-66 (9th Cir. 1995) (upholding inspection of outgoing mail).

In this case, the plaintiff alleges that on discrete and isolated instances, his mail was mishandled or destroyed by officials at SCI-Coal Township. This allegation has a somewhat self-referential aspect to it, as the plaintiff alleges that some of the mail that was allegedly tampered with was mail he was endeavoring to send to prisoner advocacy organizations or to law enforcement, in order to complain about mishandling of his mail and other disputes he was having with his jailers. What the plaintiff lacks is evidence to support his claims.

Thus, the plaintiff alleges that prison officials must have destroyed two letters he attempted to mail to his mother, in part to wish her a happy birthday, since his mother later wrote to him and claimed he had overlooked her birthday. (Doc. 14, ¶ 50.) This rank speculation that unidentified prison personnel destroyed his outgoing mail is inadequate to survive a motion for summary judgment filed by the named defendants who are not tied to this conduct in any intelligible way.

Similarly, the plaintiff claims that he sent missives to the Prison Activist Resource Center, the Human Rights Watch Prison Project, the Pennsylvania State Police, a District Attorney, and the Pennsylvania Commonwealth Court. The plaintiff speculates that these pieces of outgoing mail were tampered with or mishandled because he did not receive responses to his letters. The absence of a letter from any of these organizations or law enforcement is simply not proof that the plaintiff's letters were destroyed, or that they went undelivered. At bottom, it is simply speculation on the plaintiff's part, and such speculation will not suffice to prove his claim.

The plaintiff does allege, and the defendants seem not to deny, that prison officials notified him that three pieces of his outgoing mail to family members had been confiscated, and he was provided a receipt regarding these letters. (Doc. 14, ¶ 59.) The plaintiff seems to be claiming that the mere fact of confiscating isolated pieces of personal mail would be unlawful, but he does nothing to provide detail regarding this claim, or to explain how this isolated incident amounts to a First Amendment violation. Indeed, it appears that the confiscation was brought to the plaintiff's attention, and that he was provided a receipt regarding the incident. The plaintiff does not identify which of the remaining defendants, if any, were involved in this alleged confiscation, and he does not offer any evidence to show that this alleged confiscation was unlawful.

The plaintiff claims that a single piece of mail that the Pennsylvania State Police sent to him was opened outside of his presence. But there is no indication that such a letter constituted privileged legal mail, and the plaintiff does not enjoy a broad First Amendment right to have his personal mail delivered to him without having it first inspected by prison officials. However, because there is

nothing to indicate that this letter could conceivably constitute "legal mail", the plaintiff simply does not have any legitimate interest in preventing prison officials from first opening his personal mail to ensure it does not contain contraband before delivering it.

Finally, the plaintiff claims that a single letter that he wrote to his family dated April 11, 2013, was returned to him having been opened by prison officials. This allegation is hopelessly vague, and it is not clear what exactly the plaintiff is claiming here. The mail in question appears to have been personal correspondence from the plaintiff to his family, and it appears that some unidentified prison officials may have opened the envelope in which the letter was enclosed. What it is about this act that the plaintiff finds objectionable is unclear, and we do not find any indication in the amended complaint or in the record evidence that the act of opening a prisoner's outgoing personal mail impinges upon a recognized constitutional interest. Indeed, the caselaw cited above makes clear that inmates do not enjoy an unrestrained right to send and receive mail without any review by prison officials; to the contrary, such review is a routine and regular incident of prison life, and the spare allegation that outgoing mail was

opened before sent does not state an actionable claim for a First Amendment violation.

## V. RECOMMENDATION

At bottom, this is a case that has a limited number of claims and defendants remaining, and is focused exclusively on claims by the plaintiff that unknown employees at SCI Coal Township mishandled his personal or legal mail. In many instances, the plaintiff's allegations are unsupported conjecture, or are conclusions based solely on his own deductive reasoning which is itself dubious because it is based on unsupported assumptions. In other cases, it appears that the plaintiff may be claiming that purely personal mail was reviewed or even confiscated by prison officials before it was sent or returned to the plaintiff. The plaintiff casually asserts that this practice of reviewing inmate mail is an intrusion upon the First Amendment, but the cases say otherwise. The plaintiff cannot save these claims by recasting all of the mail he sends and receives as privileged legal mail, and he cannot proceed past summary judgment where his claims of mail tampering lack evidentiary foundation.

For these reasons, IT IS RECOMMENDED THAT the defendants' motion for summary judgment (Doc. 60) be GRANTED and the case closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of April, 2016.

                                           */s/ Martin C. Carlson*
                                           Martin C. Carlson
                                           United States Magistrate Judge